**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| ELVIN PETTET et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:11-CV-04049-NKL |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN MAY, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court is Defendants' Motion to Dismiss [Doc. # 56] along with

cross-motions for summary judgment filed by both parties [Docs. # 76 and # 78] and a

Motion for Class Certification [Doc. # 82] by Plaintiffs. For the reasons below, the Court

grants Defendants' Motion to Dismiss and denies the remaining motions as moot.

**I.      Background**

On February 7, 2011, Plaintiffs Elvin Pettet, Randy Reed, Connie Russell and

Gary Hayes filed this lawsuit against the Defendants regarding the Missouri Second

Injury Fund ("SIF"). The SIF, created by an amendment to the worker's compensation

law, is a public-benefit fund that promotes employment of handicapped and disabled

individuals by eliminating employers' exposure to liability for the employees' previous

1

disabilities. [Doc. # 44, ¶ 7, 8]. Plaintiffs are individuals who sustained serious injuries resulting in disability from accidents arising out of and in the course of their employment. Plaintiffs possess final awards providing them payments from the SIF for the remainder of their lives as compensation for permanent total disability. [Doc. # 44, ¶ 44]. Defendants are the Director of Missouri's Division of Workers' Compensation, currently John Hickey, and Missouri's Treasurer, Clint Zweifel.

The Missouri State Treasurer's office is the custodian of SIF, and the Missouri Attorney General's Office defends the claims made against the Fund [Doc. # 44, ¶9]. Defendant Zweifel, as Missouri State Treasurer, is required by Mo. Rev. Stat. § 287.715 to impose an annual SIF surcharge on Missouri employers, the revenue from which is deposited into SIF to pay for its benefit and expense liabilities. [Doc. # 44, ¶ 10]. The surcharge historically fluctuated based on revenue needs estimated by the Director of the Division of Workers' Compensation in order to meet the amount of benefits payable during the ensuing calendar year. Effective August 28, 2005, § 287.715 was legislatively amended to cap the surcharge at 3%. [Doc. # 44, ¶11]. However, the Committee on Legislative Research issued a fiscal note stating the SIF surcharge needed to be at 4.5%, 5.5%, and 6.5% for 2006 through 2008 in order to meet estimated obligations. [Doc. # 44, ¶12]. In April 2007, the Missouri State Auditor determined that the 3% cap hinders the Department of Labor and Industrial Relations' ability to generate revenues sufficient to cover SIF expenditures. The Auditor warned there was not a sufficient contingency plan to address potential SIF insolvency, and as a result, benefits to injured workers may

2

be in jeopardy. [Doc. # 44, ¶13-14]. Governor Matt Blunt then requested the Director of the Division of Workers' Compensation to immediately conduct an actuarial study of SIF. [Doc. # 44, ¶15]. The study, issued in July 2007, determined that SIF would reach a negative balance in 2009 assuming that the maximum rate of assessment was maintained at 3%. [Doc. # 44, ¶16]. The Auditor stated in 2008 that revenues had exceeded the 2007 expectations by $13 million, but that SIF would become insolvent in the second quarter of 2009. [Doc. # 44, ¶19]. In July 2009, the Division of Workers' Compensation projected SIF's insolvency could occur as early as December 2009. [Doc. # 44, ¶ 21].

In an effort to increase SIF's cash flow in September 2009, the Missouri Attorney General suspended negotiations on all claims involving SIF and refused to enter into any settlement agreements. Also, SIF delayed payment on all permanent partial disability settlements previously approved but unpaid. [Doc. # 44, ¶¶ 23, 24].

The Second Injury Fund is currently unable to meet its legal obligations. Approximately 80 persons have permanent total disability awards but have not been paid. Each has received a letter from the office of the Missouri Attorney General advising of the inability to make payment "due to its current balance and projections for the remainder of the fiscal year." [Doc. # 44, ¶ 38].

Plaintiffs are concerned that they will not receive their court-ordered SIF disability compensation for the duration of their lifetimes. As such, Plaintiffs bring claims under the Americans with Disabilities Act ("ADA"), the Missouri Human Rights Act ("MHRA"), 42 U.S.C. §§ 1983 and 1985, and the United States and Missouri

3

Constitutions.

On May 2, 2011, Plaintiffs filed a Motion for Preliminary Injunction to enjoin Defendants from ceasing payment of their permanent total disability compensation benefits. The Motion was denied by the Court on August 15, 2011. On December 22, 2011, Defendants filed the pending Motion to Dismiss, while parties' summary judgment motions were filed on February 10 and 11, 2012. In their complaint, Plaintiffs request that the Court 1) find unconstitutional the portion of SBI capping the surcharge at 3%; 2) enjoin Defendants from stopping or decreasing Plaintiffs' benefits; 3) require Defendants to fully fund SIF so as to revive and maintain its financial stability; 4) create a constructive trust, directing Defendants to transfer all monies held in SIF and all future collections obtained; 5) place SIF into a receivership to be supervised by the Court; and 6) place SIF under the supervision of a Master to be supervised by the Court. [Doc. # 44, 33-34].

## II.    Discussion

### A.    Motion to Dismiss

On a motion to dismiss, the Court construes the complaint liberally, in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a short and plain statement is to provide defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550

4

U.S. 544, 545 (2007) (citation omitted). To satisfy this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). On a motion to dismiss, a court's evaluation of a plaintiff's complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

### 1. ADA Claim

Plaintiffs' claim in Count I alleges that Defendants violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. Title II "prohibits discrimination in the services of public entities." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998). To state a claim under the ADA, a plaintiff must show that "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of [the public entity's] services, programs, or activities, or was otherwise subjected to discrimination by the [entity]; and (3) that such exclusion, denial of benefits, or other discrimination, was by reason of his disability." *Baribeau v. Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010).

In their complaint, Plaintiffs have failed to allege that Defendants have excluded Plaintiffs from SIF. The pleadings indicate that Plaintiffs still possess lifetime entitlements to the full judgments awarded them, and Defendants have not interfered with Plaintiffs' legal rights to receive payments from their judgments. Rather, the risk to Plaintiffs stems entirely from the actions of the Missouri legislature in capping the

5

surcharge at 3%, and thus making it difficult or impossible for Defendants to ensure that payments will continue to be made out of existing funds.

However, even if delayed or suspended payments did constitute a de facto denial of Plaintiffs' entitlements, Plaintiffs fail to allege sufficient facts to show that their exclusion from the program was by reason of disability, the ADA's third requirement. Plaintiffs have pled no facts indicating that Defendants consider a beneficiary's disabled status when deciding how to allocate the limited funds in the SIF. Rather, Plaintiffs admit that Defendants' own actions stem from "inadequate SIF reserves." [Doc. # 44 at 7]. Further, Plaintiffs have made no showing that the legislature was motivated by reasons of disability to reduce funding for the program.

Plaintiffs argue that the third requirement can be satisfied by showing that the law has a disparate impact upon the disabled, even if a subjective intent to discriminate is lacking. *See Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 574-75 (2d Cir. 2003). To establish such a claim, Plaintiffs would have to show "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Id* at 575. To successfully establish a showing of disparate impact, Plaintiffs must "identify members of a protected group that are affected by the neutral policy and then identify similarly situated persons who are unaffected by the policy." *Id.* at 576-77.

Case 2:11-cv-04049-NKL   Document 88   Filed 04/19/12   Page 6 of 17

However, here, all SIF beneficiaries, whether disabled or not,[1] are, or will be, affected by the legislature's surcharge cap, as the law directly impacts the overall funding coming into the program, rather than any particular subgroup of beneficiaries.

Plaintiffs also argue that disabled SIF beneficiaries are negatively impacted by the legislative cap on the surcharge, while non-disabled recipients of ordinary workers compensation benefits are left unaffected. However, this argument is not persuasive. First, the state of Missouri does not have the same obligations to the recipients of ordinary workers' compensation as it does to SIF beneficiaries. The benefits owed to the former group are paid by their employers or insurers, not by a state-managed fund. Because their payments are from fundamentally different sources, these two groups cannot be considered similarly situated. Second, the two programs are not clearly differentiated based on the disability status of their participants. Plaintiffs have not alleged (nor could they) that persons receiving workers' compensation awards are not disabled.

For the foregoing reasons, Plaintiffs have failed to allege a prima facie claim for discrimination under the ADA and thus Count I of their third amended complaint must be dismissed.

### 2. Contract Clause Claim

Count IV of Plaintiffs' complaint alleges that the legislative surcharge cap violates the Contract Clause of the U.S. Constitution because it "impairs the obligation of the SIF

---

[1] The SIF provides benefits to disabled persons with a previous disability, but it also covers people, whether disabled or not, who are injured while employed by an unlawfully insured employer. § 287.220.1; 287.220.5.

to meet the contractual obligations to Plaintiffs." [Doc. # 44, ¶ 76].

The Contract Clause of the Constitution mandates that no state shall pass any "law impairing the obligation of contracts." U.S. Const. art. I, § 10, cl. 1. The Contract Clause is not violated by a change in the law unless Plaintiffs can show that (1) there is a contractual relationship, (2) impaired by a change in the law, and (3) the impairment is substantial. *Koster v. City of Davenport*, 183 F.3d 762, 766 (8th Cir. 1999) (citing *General Motors Corp. v. Romein*, 503 U.S. 181, 186-87 (1992)). The Contract Clause is not implicated unless there is a "contractual agreement regarding the specific ... terms" impacted by the statute in question. *Romein*, 503 U.S. at 187. Whether there is such an agreement is a question determined under federal law. *Id.* However, great weight is given to a state court's interpretation of state law, which will be accepted unless "manifestly wrong." *Hale v. Iowa State Board of Assessment and Review*, 302 U.S. 95, 101 ( 1937).

The first issue is whether Plaintiffs' benefits under SIF constitute a contractual obligation. Plaintiffs allege that under Missouri law, the Worker's Compensation Act becomes a part of every employment contract upon the acceptance of the Act's terms by each employer and employee. [Doc. # 69 at 16-17]. Plaintiffs thus argue that the administrative awards they received entitling them to worker's compensation benefits from SIF are "in the nature of payments or obligations due" under their employment contracts. [Doc. # 69 at 16]. As they did in their motion for preliminary injunction, Plaintiffs rely on *Welborn v. S. Equip. Co.*, 395 S.W.2d 119, 124 (Mo. 1965), for the

8

proposition that, under Missouri law, the terms of the Workers' Compensation Act become part of an employment contract. As discussed in the Court's order denying Plaintiffs' motion, *Welborn* was decided at a time when the acceptance of the Act's terms was voluntary. Thus, at the time, incorporation of the Act's terms into the employment contract was done with all the hallmarks of a bargained-for contract. However, since *Welborn* was decided, the Workers' Compensation Act has become mandatory for employers.

Plaintiffs now cite a later case, *Perry v. Carter*, 620 S.W.2d 50, 52-53 (Mo. Ct. App. 1981), as evidence that Missouri still considers the now-mandatory Workers' Compensation Act to become part of the employment contract. However, the reference to this issue in *Perry* is limited to a passing citation to *Welborn.* Further, as the Perry ruling turned on Georgia law, the court did not need to conduct an analysis of whether the mandatory nature of the Act had altered the nature of contemporary employment contracts in Missouri. *See Perry*, 620 S.W.2d at 53.

However, even if the Workers' Compensation Act could be read into every Missouri employment contract, Plaintiffs have failed to establish that their contractual relationships with employers have been impaired by the surcharge cap. As previously discussed,[2] the only responsibility imposed upon the employer by section 287.715 is "payment of an annual surcharge in accordance with the provisions of this section." §

---

[2] See the Court's Order denying Plaintiff's Motion for Preliminary Injunction [Doc. # 33 at 7-8].

9

287.715 (1993), § 287.715 (2005). The amount of this surcharge was determined, not by the employer, but by the director of the Division of Workers' Compensation. The imposition by the legislature of the 3% cap has not altered the responsibility of the employer to pay the surcharge as consistent with its obligations under §287.715. Though the 3% surcharge cap may ensure that SIF is inadequately funded, it is the state of Missouri that has failed to comply with its own statutory duty to adequately fund these awards rather than employers, whose compliance in making annual surcharge payments is not at issue here.

Thus, for the above reasons, Plaintiffs have not pled a viable claim that the legislative 3% cap impairs their employment contracts in violation of the Contract Clause and Count IV must be dismissed.

### 3. Due Process, Taking, and Equal Protection Claims

Under Count V, Plaintiffs pled violations of the due process, takings,[3] and equal protection clauses of the U.S. Constitution.

### i.) Due Process Claim

Plaintiffs argue that their workers' compensation benefits represent a protected property interest that was taken from Plaintiffs without due process by the legislature's imposition of a 3% surcharge cap. [Doc. # 69 at 21]. Plaintiffs do not state specifically

_____

[3] Count V alleges a takings claim under the Missouri constitution only. However, Plaintiffs appear to allege a federal takings claim in Count II, which alleges a Section 1983 cause of action. Thus, the Court will consider the federal claim before undertaking an analysis of the state claim.

10

whether they are alleging a claim under procedural or substantive due process. However,
Plaintiffs fail to allege a sufficient claim for violations under either.

If bringing a procedural due process claim, Plaintiffs cannot prevail because the
legislative process affords all the procedural protections required under the Due Process
Clause. *See Atkins v. Parker*, 472 U.S. 115 (1985) (ruling that "[t]he procedural
component of the Due Process Clause does not impose a constitutional limitation on the
power of [the legislature] to make substantive changes in the law of entitlement to public
benefits.")[4]; *Slaughter v. Levine,* 855 F.2d 553, 554 (8th Cir. 1988) (ruling that the
legislative process "completely satisfie[d]" the notice requirements of the Due Process
Clause when Congress enacted rule resulting in denial of eligibility for certain AFDC
recipients).

For a substantive due process claim alleging a violation of a non-fundamental
right, courts must uphold a policy as long as there is any conceivable rational relationship
between the law and a legitimate government purpose. *See Williamson v. Lee Optical of
Okla., Inc.*, 348 U.S. 483, 487 (1955). Courts may not strike down a law or policy simply

---

[4] In their summary judgment briefings, Plaintiffs try to distinguish *Atkins* from the
present case. They argue 1) that the Missouri legislature lacks the plenary power to adjust the
amount of previously-awarded SIF benefits unlike adjustment of the welfare benefits at issue in
*Atkins*; 2) that the food-stamp program in *Atkins* was funded by taxpayers in general while SIF is
funded by Missouri employers; and 3) that the food-stamp recipients in *Atkins* obtained their
benefits through "legislative grace" rather than bargaining while SIF beneficiaries gave up the
right to sue their employers in exchange for benefits. [Doc. # 80 at 11]. However, Plaintiffs have
not shown how these factual distinctions undermine the basic ruling or reasoning in *Atkins* that a
legislature does not violate procedural due process under the U.S. Constitution by passing a law
that limits funding.

11

because it believes the law or policy is unwise.  *See Id.* at 488.  Under existing precedent, economic rights are not considered to constitute a fundamental right for the purposes of substantive due process, and thus the Court will employ rational basis review.  *See W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 392 (1937) (ruling that freedom to contract is not a fundamental right under substantive due process).  "[T]hose attacking the rationality of the legislative classification have the burden  to negative every conceivable basis which might support it[.] "  *F.C.C. v. Beach Commc'ns, Inc*., 508 U.S. 307, 315  (1993) (internal citations omitted).  Here, the Missouri legislature could have rationally concluded that reducing the maximum SIF surcharge imposed upon employers would strengthen the financial health of businesses in the state, a legitimate state interest.  That this law has the effect of benefitting employers at the expense of disabled and injured workers does not render the purpose illegitimate, as it is generally within the priority of the legislature to determine how to shift the benefits and burdens of economic programs and policies upon different groups.  *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976) ("this Court long ago upheld against due process attack the competence of Congress to allocate the interlocking economic rights and duties of employers and employees upon workmen's compensation principles").  Moreover, the legislature has not altered the award of benefits under Missouri law.  The money is still owed by this state-created entity.

For the foregoing reasons, Plaintiffs' due process claim fails as a matter of law and is hereby dismissed.

12

**ii.) Takings Claim**

Count VI of Plaintiffs' complaint also alleges that Defendants have taken Plaintiffs' property without just compensation. The Takings Clause prohibits the taking of "private property ... for public use, without just compensation." U.S. Const. Amend. V. Even if no physical property is taken, governmental action can still constitute a regulatory taking if a regulation impermissibly infringes upon the plaintiff's property interest. *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). The party challenging governmental action as an unconstitutional taking bears a substantial burden. *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998).

However, Plaintiffs have not established the threshold requirement that government action has infringed upon the Plaintiff's property interest, for Plaintiffs still retain their entitlement to this award, even if funding for it has been reduced by the legislature. The Court understands that payments of these awards are currently in jeopardy because of the funding reductions to SIF caused by the employer surcharge cap. However, even if Plaintiffs have a protected property interest in the amount of their awards, they have not established that they have a similar property interest in the levels of funding set by the legislature. Decisions over what programs to fund or not to fund generally represent a basic right and power possessed by the legislative branch. Plaintiffs have cited no case law, and the Court is not aware of any, which stands for the proposition that a legislative decision to de-fund a program can represent a taking of a plaintiff's entitlement. However, the Court need not discuss issues concerning legislative

13

power, as existing precedent does not support Plaintiffs' claims. In particular, *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 223 (1986), cited by both parties, is instructive. In *Connolly*, there was a transfer of property, in the form of a Congressionally imposed penalty, upon certain employers who chose to withdraw from multi-employer pension plans. The Court noted that the employer would be permanently deprived of assets, but declared that the government action still did not constitute a taking. In the present case, unlike in *Connolly*, there is not even a direct transfer of property. The Missouri legislature chose to cap the SIF employer surcharge at 3%. However, Plaintiffs' property interest does not lie in those percentage points of funding which the statute eliminated, but instead in the individual awards given to them by the State. As the facts in the present case are even weaker than those in *Connolly*, Plaintiffs have not met their burden to state a claim for a violation of the Takings Clause.

### iii) Equal Protection Claim

In Count V, Plaintiffs also allege that the legislative cap on the SIF surcharge violates their right to equal protection under the law. The Equal Protection Clause requires the government to treat all similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). As disability is not a suspect class, disparate treatment on the basis of disability is subject to rational basis review. *Klingler v. Director, Dep't of Revenue, State of Mo.*, 455 F.3d 888, 891-92 (8th Cir. 2006). As a threshold matter, "[t]o state an equal protection claim, [Plaintiffs] must have established that [they were] treated differently from others similarly situated." *Johnson v. City of*

14

*Minneapolis*, 152 F.3d 859, 862 (8th Cir.1998).

However, as discussed previously in the ADA section, Plaintiffs have failed to plead that the legislative cap treats them differently from others who were similarly situated. First, the challenged law is aimed at SIF beneficiaries without regard to their disability, and Plaintiffs have pled no facts to the contrary. Further, though Plaintiffs argue that the appropriate group of similarly situated persons consists of non-SIF recipients of workers' compensation awards against employers, this claim is also without merit, for the reasons mentioned previously.

### 4.     Section 1983 Claim

Plaintiffs also assert that Defendants' conduct constitutes a federal civil rights violation actionable under 42 U.S.C. § 1983. However, a Section 1983 claim requires that the complaint "plausibly allege the deprivation of a constitutional right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (internal citations omitted). As discussed previously, Plaintiffs have not plausibly alleged the deprivation of any constitutional right and thus the Section 1983 claim also must be dismissed.

### 5.     State Law Claims

As all of Plaintiffs federal claims have been dismissed, the only remaining claims in Plaintiffs' complaint are state law claims. A district court may decline to exercise supplemental jurisdiction over state law claims if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. §§ 1367(c)(3). The remaining claims are all claims brought either under Missouri state law, including the Missouri constitution.

15

Given that these claims involve exclusive questions of state law, the Court finds that the balance of factors weighs in favor of having a Missouri state court decide these claims. For this reason, the Court declines to exercise supplemental jurisdiction over the remaining claims.

**B.    Motions for Summary Judgment and Class Certification**

Given the Court's ruling on Defendants' Motion to Dismiss, all claims in Plaintiffs' complaint are hereby dismissed and thus there is no need to consider Plaintiffs' remaining motions for summary judgment and class certification.

**III.    Conclusion**

For the above reasons it is hereby ORDERED that Defendants' Motion to Dismiss [Doc # 56] is GRANTED.  The cross-motions for summary judgment filed by Plaintiffs and Defendants [Docs. # 76 and # 78] and Plaintiffs' Motion for Class Certification [Doc. # 82] are denied as moot.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  April 19, 2012
Jefferson City, Missouri

16

17